In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1375

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KERRY L. SMITH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:07-cr-40038-jpg-1 — **J. Phil Gilbert**, *Judge.*

ARGUED FEBRUARY 19, 2014 — DECIDED OCTOBER 24, 2014

Before POSNER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Kerry L. Smith was indicted for conspiring to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846, purchasing a vehicle with currency derived from an unlawful activity, in violation of 18 U.S.C. § 1957; concealing information with the intent to defraud the Social

Security Administration, in violation of 42 U.S.C. § 1383(a)(3);[1] and making false statements on applications for food stamps, in violation of 18 U.S.C. § 1001(a)(2). He signed a proffer agreement and later pleaded guilty to each of those charges. After a sentencing and forfeiture hearing, the district court imposed a forfeiture order that included the forfeiture of eight parcels of real property owned by Mr. Smith. The Government claimed these parcels were proceeds from his illegal activities.

Mr. Smith timely appealed the district court's forfeiture ruling; he contended that, in determining that the properties were subject to forfeiture, the district court had relied improperly on statements that he had made during proffer discussions. We now affirm the district court's judgment. The district court did not err in admitting testimony about Mr. Smith's proffer statements. Furthermore, its determination that the eight properties were subject to forfeiture as proceeds of his drug trafficking was supported by a preponderance of the evidence. In the alternative, the properties are clearly subject to forfeiture as substitute assets.

---

[1] The Government appears mistakenly to have cited 42 U.S.C. § 1383(a)(3) in Count Three of the Superseding Indictment instead of 42 U.S.C. § 1320a-7b(a)(3). Neither party contested the validity of the charge.

# I

# BACKGROUND

## A.

Before pleading guilty to the crimes charged in the indictment, Mr. Smith participated in two proffer interviews on May 21 and July 2, 2007. Prior to the beginning of those interviews, he signed a proffer letter. His counsel also signed the letter. The proffer letter set forth the limits on how the Government could use any information that Mr. Smith provided in the proffer interviews. The letter first stated that "no statements or information provided by [Mr. Smith] … will be used against [him] in any criminal case during the government's case in chief."[2] It explicitly noted, "That is, however, the *only* limitation on the use the government may make of [Mr. Smith's] statements."[3]

The remainder of the letter discussed various situations in which the Government could use Mr. Smith's proffer statements. It specifically informed Mr. Smith and his counsel that the Government could make derivative use of any information revealed during the proffer sessions:

> [T]he government may make derivative use of any information revealed during the proffer. The government may pursue any investigative leads suggested by … information received … . Thus, should [Mr. Smith] proceed to trial, the government will not

---

[2] R.71-1 at 1.

[3] *Id.* (emphasis in original).

> have to prove that the evidence it would introduce
> at trial is not derived from any statements made by
> or other information received from [Mr. Smith]
> during the … proffer[.][4]

The proffer letter also stated that information he provided could be used against him at trial if he took a position inconsistent with his proffer statements:

> [I]f … [Mr. Smith] were to testify contrary to the
> substance of his proffer statement, or through any
> manner whatsoever, either personally or through an
> attorney or other representative, … present a posi-
> tion inconsistent with the information provided in
> his proffer statement, the government may use
> either as evidence in chief, or rebuttal evidence, any
> statements made or other information provided by
> [him]. This provision is necessary to assure that no
> court or jury is misled by receiving information or
> implications materially different from that provided
> by [Mr. Smith]. In addition, we want to emphasize
> that the above-mentioned examples are not totally
> inclusive of the uses the government may make of
> … [the] proffer or discussion.[5]

The letter further provided that Mr. Smith's proffer statements could be presented to the district court during sentencing:

---

[4] *Id.*

[5] *Id.* at 2.

> [T]he government has agreed that no … information provided by [Mr. Smith] during the … discussion will be used against [him] in any criminal case during the government's case in chief. *The government will, however, be free to provide any such information to any United States District Court in the event [he] either pleads guilty or is found guilty … .*

> [N]o self-incriminating information … will be used to enhance the Offense Level against [Mr. Smith] except as provided in [Section 1B1.8 of the Sentencing Guidelines]. The government may, however, use any … information provided by [him] to rebut evidence or arguments at sentencing materially different from any statements made or other information provided by [him] during the … discussion.[6]

The proffer letter did not recite Federal Rule of Criminal Procedure 11(f) ("Rule 11"), which states that "[t]he admissibility or inadmissibility of … a plea discussion[] and any related statement is governed by Federal Rule of Evidence 410" ("Rule 410").[7]

---

[6] *Id.* (emphasis added).

[7] Federal Rule of Evidence 410 states:

> **(a) Prohibited Uses.** In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

> (continued...)

During the first proffer session, Mr. Smith admitted that he had trafficked in marijuana and described the quantities and amounts of money typically involved in his transactions.

---

[7] (...continued)

> **(1)** a guilty plea that was later withdrawn;
>
> **(2)** a nolo contendere plea;
>
> **(3)** a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
>
> **(4)** a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.
>
> **(b) Exceptions.** The court may admit a statement described in Rule 410(a)(3) or (4):
>
> > **(1)** in any proceeding in which another statement made during the same plea or plea discussions has been introduced, if in fairness the statements ought to be considered together; or
> >
> > **(2)** in a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present.

During the second proffer session, Mr. Smith admitted that he had used proceeds from his drug trafficking to purchase real estate and vehicles. Specifically, Mr. Smith told the Government that he had used drug proceeds to purchase real property at 317 Birch Lane, 309 S. Crestview, 605 E. Snider and 1808 W. Freeman in Carbondale, Illinois. He also admitted that his purchases of real property at 501 E. Snider and 1005 E. Cindy in Carbondale, Illinois, were tied indirectly to drug proceeds because those properties were financed in part from sales or loans from property that had been purchased with drug proceeds.

After the proffer sessions, Mr. Smith moved for a substitution of counsel. He wanted to replace his attorney, John Rogers, with new counsel, Beau Brindley. The district court permitted Rogers to withdraw, but denied the request from Mr. Brindley to substitute as Mr. Smith's counsel and to continue an impending trial date. The district court then appointed replacement counsel for Mr. Smith because of his indigence. He subsequently pleaded guilty to all of the charges in the superseding indictment, and the district court entered a judgment of conviction against him.

We overturned that conviction because, by denying the motion to substitute Mr. Brindley and to continue the trial date, the district court had denied Mr. Smith his Sixth Amendment right to choose his counsel. *United States v. Smith*, 618 F.3d 657, 665–67 (7th Cir. 2010). We remanded with instructions to allow Mr. Smith to withdraw his initial guilty plea. Mr. Smith then retained Mr. Brindley as his counsel and withdrew his earlier plea.

Under the guidance of his preferred counsel, Mr. Brindley, Mr. Smith later entered a new guilty plea to all of the charges in the Government's superseding indictment. He contested, however, Count Six of that indictment, which sought forfeiture of property that the Government alleged was tainted by Mr. Smith's criminal activity. Specifically, in Count Six, the Government charged that "any and all property constituting or derived from any proceeds [Mr. Smith] obtained directly or indirectly as a result of" his crimes was subject to forfeiture;[8] it also specified eight parcels of real property that Mr. Smith owned in Carbondale, Illinois, as subject to forfeiture.[9] Those properties included five properties that Mr. Smith had mentioned during the proffer sessions (317 Birch Lane, 309 S. Crestview, 1808 W. Freeman, 501 E. Snider and 1005 E. Cindy), as well as three other properties that he had not mentioned (111 S. Dixon, 403 N. University and 313 Crestview Lane).

At the forfeiture and sentencing hearing, the parties stipulated that Mr. Smith was responsible for the sale of 399 kilograms of marijuana, sold at $900 per pound. They also agreed that Mr. Smith had two other sources of income during the relevant time: disability income from Social Security and rental income from real estate properties that he owned. The

---

[8]  We note that revised Federal Rule of Criminal Procedure 32.2(a) specifically provides that the Government's intention to seek forfeiture of property as part of any sentence "should not be designated as a count of the indictment or information."

[9]  R.22 at 4–7.

Government presented evidence that the disputed properties were connected to Mr. Smith's illicit drug activities.

Agent Robert Anderson of the IRS Criminal Investigation Division testified during the first session of the hearing on January 17, 2013. He recounted that he had investigated Mr. Smith's finances and that Mr. Smith had received far more income during the relevant period than he had reported to the IRS. In support of his testimony, Agent Anderson relied on records from various financial institutions to reach his conclusions about Mr. Smith's income. Agent Anderson testified that Mr. Smith's expenditures during the relevant period had far exceeded what Mr. Smith could have paid from his Social Security disability benefits and rental income unconnected to his criminal activity.

Agent Anderson also testified:

> Through testimony that we have from Kerry Smith, he advised us that he commingled both his drug proceeds and other proceeds from the sale of property and money from other sources into his bank accounts.[10]

Defense counsel objected to Agent Anderson's reference to testimony from Mr. Smith "for foundation[,] for [the] time, [and the] place, when this testimony supposedly happened."[11]

---

[10] R.261 at 25.

[11] *Id.*

The district court ruled that defense counsel could cross-examine the witness on those points.[12]

On cross-examination, defense counsel asked Agent Anderson:

> Now, you did not specifically observe where Smith got the cash payments he might have made on any property in the list that you went through, did you?
>
> … .
>
> You can't identify a specific drug transaction that happened that can then be connected to any specific payment he made on any property, can you?[13]

Agent Anderson admitted that he could not. On redirect examination, the Government then questioned

---

[12] Defense counsel also objected to Agent Anderson's testimony that, "[b]ased on interviews we conducted throughout the investigation," he had learned that certain checks were purchased by another individual on Mr. Smith's behalf. *Id.* at 33–34. Defense counsel objected that the testimony was inadmissible hearsay, but the district court responded that hearsay was acceptable at a sentencing hearing. Defense counsel stated his belief that hearsay was not admissible at a forfeiture hearing. The Government offered to submit cases holding that forfeiture is "a preponderance [of the evidence standard] like the rest of sentencing" and that "hearsay or any other reliable evidence can be received at the forfeiture hearing." *Id.* at 34. The district court reviewed the cases; defense counsel then objected that the testimony was not reliable evidence within the meaning of the standard. The parties eventually agreed that the district court could determine the reliability of the testimony about the checks based on a full interview report.

[13] *Id.* at 69.

Agent Anderson about whether Mr. Smith had stated in his proffer interview that he had used drug proceeds to purchase the 1808 W. Freeman property. Agent Anderson responded affirmatively.

Defense counsel objected to the redirect testimony about what Mr. Smith had said in his proffer interviews. He maintained that nothing from the proffer interviews was admissible for any purpose. He contended that the proffer letter's terms, which permitted the use of proffer statements if defense counsel took a position contrary to the substance of those statements, did not control the admissibility of the proffer statements because Mr. Smith had a right under Rule 11 and Rule 410 not to have statements made as part of plea negotiations used against him—a right he had not waived in a knowing and voluntary manner. In defense counsel's view, absent such a knowing and voluntary waiver by Mr. Smith, everything from the proffer sessions had to be excluded under Rule 11. Defense counsel asserted:

> Rule 11(f) indicates that the admissibility of any plea discussion is governed by the language from Rule 410 of the Federal Rules of Evidence.  And if you go back to Federal Rule 410, 410 says any statement made by a defendant through a representative of the Government for purposes of plea negotiation cannot be used against him.
>
> Rule 11 adopts that with respect to plea discussions generally and says[] … that's governed by Rule 410 in terms of admissibility.

> It's our position that that means the statements
> [from the proffer session] couldn't be used unless
> there's a waiver. The proffer letter constitutes a
> waiver [only] if it's knowing and voluntary.[14]

In response to questions from the district court, defense counsel added that his argument was premised on Federal Rule of Evidence 410(a)(4), which provides that statements made during plea discussions are not admissible as evidence against the defendant in a civil or criminal case "if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Defense counsel argued that this provision applied to Mr. Smith's proffer statements because he had withdrawn his first guilty plea. In his view, the proffer discussions did not result in a plea because we overturned Mr. Smith's initial conviction on Sixth Amendment grounds and allowed him to withdraw his first guilty plea. Defense counsel asserted that Mr. Smith's second guilty plea "was not pursuant to those [proffer] negotiations."[15]

Counsel argued that Mr. Smith not only had a right not to have the proffer statements used against him but that the proffer letter was inadequate to show a valid waiver of that right. Counsel described his objection:

> The Government's proffer letter … does not in the
> view of the defense advise Mr. Smith of the preexist-
> ing right he had under Rule 11 and under Rule 410

---

[14]  *Id.* at 77.

[15]  *Id.* at 84.

not to have statements he made for purposes of negotiating pleas to the Government used against him.

If that right is not made known to him by way of the contents of the document, and the document does not establish that he knew that he had a right, the document cannot consequently establish that he voluntarily waived that right.

Therefore, it is our position that the proffer letter does not constitute a voluntary waiver of the Rule 11 and Rule 410 protections[] … . And as a result, the statement should not be admissible. …

… .

… My objection is based on the fact that the letter itself and no evidence that the Government can provide indicates that Mr. Smith ever had knowledge that, before signing that, he had a right not to have these statements used at all, absent any agreement. … The letter doesn't indicate that he knew about [that right] or waived it.[16]

In short, defense counsel argued that (1) Rule 410, as incorporated by Rule 11(f), applied at the forfeiture and sentencing stage; (2) Mr. Smith's proffer statements were made during plea discussions that resulted in a later-withdrawn guilty plea within the meaning of Rule 410(a)(4); (3) the proffer statements therefore were barred by Rule 410 absent a waiver;

---

[16] *Id.* at 73–74.

and (4) there was no knowing and voluntary waiver of Mr. Smith's right not to have the statements admitted because the proffer letter does not memorialize any such waiver.

The Government responded that the proffer information was admissible at the forfeiture and sentencing hearing. The Government further argued that, in any event, defense counsel had not properly raised the argument that Mr. Smith's acceptance of proffer terms was not knowing and voluntary. In this respect, the Government first submitted that it had been given "no notice" of defense counsel's argument and that the argument was "not timely."[17] Turning to its principal point, the Government took issue with defense counsel's contention that the Government must "put[] forth some affirmative evidence that [it had] advised the defendant of these rights."[18] It noted that Mr. Smith had been represented by counsel when he signed the letter and also urged that "the burden would be on the defendant to at least come forward and say[] … [that his attorney] never advised [him] of these things."[19]

The district court did not accept the Government's preliminary argument that defense counsel's contentions were untimely. It then ruled that, under the terms of the proffer letter, the Government could use Mr. Smith's proffer statements "that appear … from his position here and from the cross-examination of counsel [to] be contrary to" his proffer

---

[17]  *Id.* at 79, 81.

[18]  *Id.* at 78.

[19]  *Id.* at 80.

statements.[20] It further ruled that, through his cross-examination of Agent Anderson, defense counsel had opened the door to a discussion about whether Mr. Smith admitted to using drug proceeds for the disputed properties.

Following the district court's ruling, Agent Anderson testified further. He stated that Mr. Smith had said during the proffer sessions that several of his properties, including 309 Crestview, 605 E. Snider and 1808 W. Freeman, were purchased at least in part with drug proceeds.

### B.

At the hearing, the district court ruled that the properties were forfeitable under 21 U.S.C. § 853(a) as proceeds from Mr. Smith's drug trafficking.[21] The district court noted that Mr. Smith had two other sources of income during the relevant time: disability income from Social Security and rental income from real estate properties that he owned. The court first concluded that Mr. Smith's disability income was insufficient to account for the purchase of the properties. It then concluded that Mr. Smith's rental income was "ill-gotten gains from drug sale[s]" because it "was derived … from purchases … funded

---

[20]  *Id.* at 89.

[21]  The district court was required to find that the disputed properties were forfeitable by a preponderance of the evidence. *United States v. Melendez*, 401 F.3d 851, 856 (7th Cir. 2005).

primarily from Smith's drug proceeds."[22] Even if the rental income were legitimate, the district court further determined, "his legitimate income from both the [Social Security] and rental income would not be enough to justify his cash flow or the purchases that he made."[23] The district court noted that, under 21 U.S.C. § 853(d), there is a rebuttable presumption that Mr. Smith's disputed properties were subject to forfeiture since they were acquired during or near the period of his criminal activity, and "there is no likely source for [them] other than the proceeds of the sale of his drugs."[24]

The district court imposed a forfeiture judgment of $790,020 to reflect the admitted proceeds of Mr. Smith's drug sales. The forfeiture judgment listed various property, including the eight parcels of real property at issue here, as forfeitable because they constituted or were derived from Mr. Smith's marijuana proceeds. The district court's forfeiture order also allowed the forfeiture of substitute assets to reach the $790,020 judgment.[25]

---

[22] R.262 at 176.

[23] *Id.*

[24] *Id.* at 175. The parties do not dispute when the property was acquired.

[25] The forfeiture order stated:

> A monetary forfeiture judgment is hereby entered in favor of the United States against Kerry Smith in the amount of $790,020.00. The net proceeds from the sale of the above-listed specific property items shall be credited towards the $790,020.00 judgment. The United States may,

(continued...)

## II

## DISCUSSION

### A.

Mr. Smith presents us with a single issue—the legality of the forfeiture of eight particular properties.[26] The Government claimed, and the district court found, that the properties were subject to forfeiture because they were purchased with funds derived from Mr. Smith's illicit drug transactions. In the alternative, the Government argued that the properties were subject to forfeiture as substitute property.

---

[25] (...continued)

> at its option, enforce said judgment as a forfeiture judgment with the ability to seek to forfeiture substitute assets; enforce said judgment as an ordinary monetary judgment in favor of the United States by any legal means; or enforce said judgment as a combination of the foregoing as long as the United States does not obtain double recovery in excess of the total amount of the judgment.
>
> The Court specifically finds that with respect to the $790,020.00 in drug proceeds, not all of the proceeds, as a result of the acts and omissions of the defendant, can be located upon the exercise of due diligence and that the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) is appropriate.

R.246-1 at 5.

[26] The district court had jurisdiction under 18 U.S.C. § 3231. This court has jurisdiction over this appeal under 28 U.S.C. § 1291.

Criminal forfeiture is considered to be punishment and therefore is part of the sentencing process. *Libretti v. United States*, 516 U.S. 29, 39 (1995). The Government therefore has the ultimate burden of establishing the forfeitures by a preponderance of the evidence. *United States v. Patel*, 131 F.3d 1195, 1200 (7th Cir. 1997). We review factual findings of the district court made in the course of adjudicating a forfeiture for clear error. *United States v. Melendez*, 401 F.3d 851, 856 (7th Cir. 2005).

The forfeiture approved by the district court was calculated on the basis of Mr. Smith's relevant conduct: He had sold 877.8 pounds of marijuana at $900 per pound. Consequently, the district court entered an *in personam* judgment for $790,020. Mr. Smith does not dispute the correctness of this *in personam* judgment. What Mr. Smith does dispute is the district court's decision to permit the Government to seize, pursuant to that forfeiture judgment, the eight properties specifically named in the forfeiture order. After our study of the record and briefs, and after hearing from counsel at oral argument, we conclude that Mr. Smith's contention that these properties cannot be seized under the order must fail.

### 1.

We begin by examining in some detail Mr. Smith's precise contention. As we have noted, Mr. Smith contests the district court's decision that eight parcels of real property were subject to forfeiture as proceeds of his drug trafficking.[27] In his view,

---

[27] In his reply brief, Mr. Smith also contends for the first time that the

(continued...)

those parcels were tied to his illicit activities only by the statements that he made to the Government in his proffer interview, and, therefore, those proffer statements were improperly admitted in the forfeiture proceedings.

It is also important to note the basis of Mr. Smith's contention that his proffer statements were improperly admitted. He does *not* claim that the district court erred in concluding that these statements were admissible under the terms of the proffer letter. Rather, he contends his statements were not admissible because there was insufficient evidence to establish that he knowingly and voluntarily had waived his alleged right under Rules 11 and 410. To show that he made a knowing and voluntary waiver, he contends, the Government must demonstrate that he was "informed of his pre-existing right to have such statements protected from disclosure"[28] before he signed the proffer letter permitting disclosure in certain circumstances.

Mr. Smith maintains that these proffer statements were the *only* evidence that his eight parcels of real property were purchased with drug trafficking proceeds and therefore were subject to forfeiture. He therefore submits that the Government cannot justify the forfeiture of these parcels under 21 U.S.C. § 853(a) as proceeds from or connected to illicit activity

---

[27] (...continued)

properties cannot be seized as substitute property because the district court treated them as proceeds. Reply Br. 2. We address that argument *infra* Part II.B.1.

[28]  Appellant's Br. 6.

without his proffer statements. In Mr. Smith's view, the Government's reliance on a "net worth" analysis under section 853(d) of that statute is infirm. The net worth theory compares legitimate income to expenditures; excess expenditures are presumed to come from illegitimate sources. In order to apply this theory to his disputed properties, he notes, the court must accept the conclusion that his rental income was tainted because the rental properties were purchased with ill-gotten gains from his drug trafficking. That conclusion, he submits, is based on his improperly admitted proffer statements. Without admissible proof that the rental income was tainted, he contends, the Government cannot argue that there was no likely legitimate source for the funds used to purchase the properties disputed here.

## 2.

We first address the Government's submission that Mr. Smith has waived the right to make these admissibility arguments on appeal by failing to raise those arguments in advance of the district court's forfeiture and sentencing hearing. The Government had notified Mr. Smith of its intention to introduce his proffer statements in advance of the hearing. Mr. Smith did not object, however, until the hearing, when Agent Anderson testified about Mr. Smith's proffer statements. In the Government's view, his arguments were, by that point, untimely.

Although the Government was not notified of Mr. Smith's arguments before the hearing, the Government had adequate time to respond. The hearing was split into two sessions, one

on January 17 and one on February 14, 2013. Defense counsel clearly laid out the objection during the first session. The Government therefore had time to prepare a response before the second session of the hearing. In any event, the district court considered and ruled on Mr. Smith's argument without finding it to be waived. A district court "may, for good cause, allow a party to make a new objection at any time before sentence is imposed" during sentencing. Fed. R. Crim. P. 32(i)(1)(D). Like the district court, we decline to hold that Mr. Smith waived his challenge to the admissibility of the proffer statements by not making it before the forfeiture and sentencing hearing, and we proceed to a substantive consideration of his arguments.

### 3.

Assuming for the moment that Mr. Smith's reading of Rule 11 and Rule 410 is correct, the record makes clear that he has waived, through his proffer letter, any right to rely on these rules. The provisions of Rule 11 and Rule 410 "are presumptively waivable." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). Indeed, the parties agree that a defendant may waive his right to prevent his statements from plea negotiations from being used against him. *Accord United States v. Krilich*, 159 F.3d 1020, 1024 (7th Cir. 1998) (citing *Mezzanatto*, 513 U.S. 196).[29]

---

[29] The Supreme Court has held explicitly that the waiver of a jury determination as to the forfeitability of property need not be included within the Rule 11 inquiry. *See Libretti v. United States*, 516 U.S. 29, 48–51 (1995); *see also* Fed. R. Crim. P. 32.2(b), advisory committee's note to the

(continued...)

Mr. Smith contends that he has not waived these rights because the Government had the burden of showing that his waiver was knowing and voluntary, and it did not carry that burden. We cannot accept that argument. The Supreme Court has held that "*absent some affirmative indication that the [proffer] agreement was entered into unknowingly or involuntarily*, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Mezzanatto*, 513 U.S. at 210 (emphasis added); *see also Libretti*, 516 U.S. at 42 ("We are unpersuaded that the Rule 11(f) inquiry is necessary to guarantee that a forfeiture agreement is knowing and voluntary."). Consequently, signing a proffer letter waiving rights concerning the admissibility of a plea or statements made in conjunction with that plea is treated as a valid waiver of a defendant's rights not to have proffer statements used against him. *See United States v. Dortch*, 5 F.3d 1056, 1068 (7th Cir. 1993) ("A defendant waives any objection to the use of his own proffer statements to impeach him at trial when he signs a proffer letter that specifically grants the government permission to impeach him if he testifies inconsistently, and later proceeds to testify inconsistently at trial."); *United States v. Goodapple*, 958 F.2d 1402, 1409 (7th Cir. 1992) ("[T]he easy answer to [the defendant's] objections to [the Government's] use [of his proffer statements] is that the objection was waived when he signed [the proffer letter]."); *cf. Mezzanatto*, 513 U.S. at 211 (noting that defendant "has never complained that he

---

[29] (...continued)
2000 adoption.

entered into the waiver agreement at issue unknowingly or involuntarily").

At the hearing, Mr. Smith failed to identify any evidentiary basis for the assertion that he unknowingly or involuntarily had entered into the proffer agreement. Indeed, defense counsel refused to state that John Rogers, Mr. Smith's counsel when the proffer letter was signed, had not informed Mr. Smith of his rights.[30] Furthermore, Mr. Smith declined to testify at the forfeiture and sentencing hearing. Consequently, Mr. Smith did not make a preliminary showing that his waiver was unknowing or involuntary. While raising the issue, defense counsel refused to identify any affirmative indications that Mr. Smith's waiver of his rights was invalid. Mr. Smith had the opportunity at the hearing to raise any factual basis to suggest that his waiver of his rights by signing the proffer letter was not a knowing and voluntary decision. At oral argument in this court, he could point to no part of the record that supported his contention. He offered no more than criticism about the absence of more evidence from the Government. Speculation that he may not have known his rights, without more, is insufficient to raise a question about whether his waiver was knowing and voluntary.[31]

---

[30] Defense counsel responded to an inquiry on whether he thought that Rogers had properly informed Mr. Smith of his rights, "I don't think we can put that on the record as proof of any kind. I don't think that's appropriate." R.261 at 81.

[31] Contrary to Mr. Smith's assertions, *United States v. Robinson*, 8 F.3d 418 (7th Cir. 1993), does not govern the present case. In *Robinson*, the defendant
(continued...)

**4.**

Lastly, assuming, for the sake of argument, that Mr. Smith had not waived the contention, we address, for the sake of completeness, whether Federal Rule of Evidence 410(a)(4) precludes the use of Agent Anderson's testimony about his proffer statements at the forfeiture and sentencing hearing. That rule prohibits use of "a statement made during plea discussions … if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Fed. R. Evid. 410(a)(1).[32]

---

[31] (…continued)

challenged a forfeiture order entered by the district court on the ground that he had not waived his right to have a jury determine factual issues related to forfeiture. We vacated the forfeiture order on that basis, noting repeatedly that there was no evidence in the record, such as "a signed waiver form," that Robinson personally had waived his right. *Id.* at 422. Here, by contrast, Mr. Smith personally signed the proffer letter, which explicitly stated that the Government only was prohibited from using his statements in its case in chief.

[32] Mr. Smith contends that the withdrawal of his initial guilty plea following his initial appeal means that the proffer sessions "resulted in a later-withdrawn guilty plea" within the meaning of Rule 410(a)(4). He urges this view even though he pleaded guilty a second time after he had obtained his counsel of choice. Mr. Smith cites no authority to support his contention that a guilty plea which is withdrawn on remand and then followed by another guilty plea is the type of "later-withdrawn guilty plea" referenced in Rule 410(a)(4). In light of our determination that Mr. Smith has waived any reliance on these rules and, in any event, that the rules do not apply to a sentencing/forfeiture situation, we pretermit any further discussion of this issue since it is unnecessary to our resolution of the case.

Mr. Smith relies exclusively on the text of the rule to support his argument. Specifically, he invites our attention to the plain wording of subsection (a)(4). The language of that subsection, read in context, simply will not bear the load that he asks it to carry.

The most direct answer to Mr. Smith's contention is that Rule 11 and Rule 410 do not govern the conduct of forfeiture proceedings. The Supreme Court has held that criminal forfeiture is "an element of the sentence imposed *following* conviction or[] … a plea of guilty." *Libretti*, 516 U.S. at 38–39 (emphasis in original); *see* Fed. R. Crim. P. 32.2(b). In *Libretti*, the Court noted that "Congress plainly intended forfeiture of assets to operate as punishment for criminal conduct … not as a separate substantive offense" and that its precedents "have likewise characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense." 516 U.S. at 39. Mr. Smith's forfeiture and sentencing hearing therefore are part of the sentencing phase of his case.

The Federal Rules of Evidence are inapplicable at sentencing.[33] *United States v. Gonzalez*, 608 F.3d 1001, 1006 (7th Cir. 2010) (citing Fed. R. Evid. 1101(d)(3)). Indeed, Mr. Smith admits that the Federal Rules of Evidence do not apply at the forfeiture and sentencing stage and that, consequently,

---

[33] Because Mr. Smith waived his right to a jury trial, we are not confronted here with a situation where a jury must consider whether specific properties are forfeitable. *See* Fed. R. Crim. P. 32.2(b)(5). We therefore pretermit discussion about whether the Federal Rules of Evidence would apply in a forfeiture determination before a jury.

Rule 410, *on its own*, does not apply to the forfeiture and sentencing hearing here. He contends, however, that because Rule 11 incorporates Rule 410's provisions into the Federal Rules of Criminal Procedure, Rule 410 does apply at the sentencing phase. He points out that Rule 11, as part of the Federal Rules of Criminal Procedure, applies during "all criminal proceedings" in federal court. Fed. R. Crim. P. 1(a)(1). By incorporating Rule 410, Mr. Smith argues, Rule 11 expands the applicability of Rule 410 beyond its normal scope such that its provisions apply during all criminal proceedings, including the forfeiture and sentencing hearing here.[34]

The argument that Rule 410 applies during sentencing is unpersuasive. Rule 11 states that the admissibility of a plea, a plea discussion and any related statement "is governed by" Rule 410. Fed. R. Crim. Proc. 11(f). The obvious meaning of this provision is that, during proceedings governed by the Federal Rules of Evidence, Rule 410 governs the admissibility of utterances that a defendant might be expected to make during the plea process, the subject matter of Rule 11. The Federal Rules of Evidence, however, *do not apply* to sentencing. *See* Fed. R. Evid. 1101(d)(3). Accordingly, Rule 410 did not bar admission of testimony about Mr. Smith's proffer statements at the forfeiture and sentencing hearing.

In sum, Rule 11 and Rule 410 are inapplicable; they pose no impediment to the admission of Mr. Smith's statements during

---

[34] *See* Appellant's Br. 7 ("Rule 11(f)[] … incorporates [Rule 410] to all criminal proceedings … including sentencing hearings and criminal forfeiture trials, which are subject to the Rules of Criminal Procedure even if the Federal Rules of Evidence are not otherwise wholly applicable.").

the forfeiture hearing. Furthermore, since the statements were admitted during the forfeiture hearing, not during the Government's case-in-chief, the proffer letter poses no barrier to their admission.

**B.**

Having determined that the testimony about Mr. Smith's proffer statements was admissible, we next consider whether the district court had a sufficient basis for finding that the disputed properties were subject to forfeiture. We conclude that whether or not the proffer statement is considered, the district court was on solid ground in holding that properties were forfeitable.

**1.**

The most straightforward reason why Mr. Smith's contention must fail is that the properties in question are clearly substitute assets that may be used to satisfy the *in personam* judgment entered by the district court. Section 853(p) provides explicitly that substitute property may be used to satisfy a judgment whenever property that is directly forfeitable under 21 U.S.C. § 853(a):

> **(A)** cannot be located upon the exercise of due diligence;

> **(B)** has been transferred or sold to, or deposited with, a third party;

**(C)** has been placed beyond the jurisdiction of the court;

**(D)** has been substantially diminished in value; or

**(E)** has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1). The properties at issue here clearly fall within the ambit of this statute. Agent Anderson testified at the forfeiture hearing that he had searched diligently to locate all of Mr. Smith's assets. Mr. Smith does not contest that assertion. More fundamentally, all of Mr. Smith's known unencumbered assets, valued at their original purchase prices, amounted to less than half of the forfeiture judgment amount. Under these circumstances, even if the properties were not directly subject to forfeiture as drug proceeds, they were subject to forfeiture as substitute property.

Mr. Smith contends that the properties could not be forfeited as substitute property because of the wording of the district court's forfeiture order. He invites our attention to the order's provision that "[t]he United States may, at its option, enforce said judgment as a forfeiture judgment with the ability *to seek to forfeit*[] substitute assets."[35] Mr. Smith submits that "[t]he court indicated that the forfeiture of substitute property would be appropriate and that the government could *seek* to forfeit such property, but did not specifically order any items

---

[35]  R.246-1 at 5 (emphasis added).

or parcels forfeited pursuant to § 853(p)."[36] The Government had not sought to forfeit the properties within the meaning of the court's order, he argues. We are unpersuaded that the wording of the district court's order did not provide adequately for the disputed properties to be forfeited as substitute property or that the Government has not pursued them as such. Mr. Smith attempts to sow dubiety where none exists.

Mr. Smith next maintains that the properties cannot be forfeited as substitute property because it "would be a logically self-contradicting ruling" to determine that assets can be both forfeitable as substitute property and forfeitable as proceeds from criminal activity.[37] In his view, assets must logically be one or the other; an asset cannot be both proceeds and substitute property.[38] An attempt to categorize the disputed properties as forfeitable proceeds of Mr. Smith's criminal activities, if it were unsuccessful, does not forever prevent those same properties from being forfeited as substitute property.[39]

---

[36] Reply Br. 2 (emphasis in original).

[37] *Id.*

[38] *See id.* (quoting *United States v. Bornfield*, 145 F.3d 1123, 1139 (10th Cir. 1998), for the proposition that "an asset cannot logically be both forfeitable and a substitute asset" because "[t]o allow such an anomaly would render the substitute assets provision meaningless").

[39] We do not believe that this conclusion is contrary to that reached by the Tenth Circuit in *Bornfield*. In *Bornfield*, the Tenth Circuit vacated the jury's special verdict, which determined that certain assets were forfeitable because they were involved in the defendant's money laundering offense.

(continued...)

**2.**

The Government maintained that the properties in question were subject to forfeiture as proceeds from illegal activity under 21 U.S.C. § 853(a). That subsection provides that a person convicted of a violation shall forfeit:

> **(1)** any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
>
> **(2)** any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation[.]

21 U.S.C. § 853(a)(1)-(2). The Government employed a "net worth" analysis and the statutory presumption in § 853(d) to argue that there was no likely income source for Mr. Smith's disputed properties that was unconnected to his drug trafficking. Section 853(d) provides:

> There is a rebuttable presumption at trial that any property of a person convicted of a felony … is subject to forfeiture under this section if the United

---

[39] (...continued)

The Tenth Circuit also vacated the district court's forfeiture order which purported to designate the assets at issue as substitute assets under 18 U.S.C. § 982(b)(1)(A) and 21 U.S.C. § 853(p); it explained that, "[a]bsent the jury's valid initial award of forfeiture, the district court could not grant forfeiture pursuant to the substitute assets provision." *Bornfield*, 145 F.3d at 1139. Here, however, there is no question that the "monetary forfeiture judgment … in the amount of $790,020," *see* R.246-1 at 5, is sound. *Cf. United States v. Saccoccia*, 564 F.3d 502, 506 (1st Cir. 2009) (distinguishing *Bornfield*).

States establishes by a preponderance of the evidence that—

   **(1)** such property was acquired by such person during the period of the violation … or within a reasonable time after such period; and

   **(2)** there was no likely source for such property other than the violation … .

21 U.S.C. § 853(d). Agent Anderson provided extensive testimony about Mr. Smith's income and expenditures during the relevant period, which indicated that there was no likely source for the disputed properties other than Mr. Smith's illicit drug trafficking. The Government argued, and the district court agreed, that Mr. Smith's rental income could not provide a legitimate income source to account for his purchase of the disputed properties.

   Mr. Smith contends on appeal that "the only evidence" that his rental income was linked to drug proceeds was his "improperly-admitted proffer statements."[40] We explained earlier that those proffer statements were admitted properly. Even if the statements were not admitted properly, there is sufficient evidence to establish that Mr. Smith's rental income was not a legitimate and sufficient source for his purchase of the disputed properties. Mr. Smith does not contest that his expenditures far exceeded his modest disability income during the relevant period. He offers no explanation of how he was able to purchase so many properties—either his rental properties or the properties disputed here—on his limited disability

---

[40] Reply Br. 3–4.

income. It therefore was not unreasonable for the district court to conclude, even absent the proffer statements, that Mr. Smith's finances indicated that his rental income was tainted by illicit drug proceeds. There was certainly sufficient evidence to support the district court's finding by a preponderance of the evidence that the disputed properties were subject to forfeiture because they were obtained in part through drug proceeds.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED